Charles Marks, J.
Petitioner passed the requisite examinations for position of patrolman in the Police Department of the City of New York and was placed on the eligible list for said position. Thereafter, he received a notice from the Personnel Director of the Civil Service Commission notifying him that he was marked “ Not Qualified — for driving record and failure to pay on time.” On May 7, 1962, a hearing was held with respect to this disqualification and on July 11, 1962, a further hearing was granted to petitioner and the original finding of disqualification was affirmed. An application was then made under article 78 of the Civil Practice Act seeking an annulment by this court of the determination of the respondents and for an order directing the respondents to reinstate the petitioner on the eligible list. Said application came on to be heard before *346 Mr. Justice Cappozzoli of this court and pursuant to section 1295 of the Civil Practice Act, a trial was directed to be held as to the issue of fact as to whether the act of the respondents in passing over petitioner was arbitrary, capricious or unlawful. Upon the trial, before this court, proof was offered showing that the petitioner had successfully passed all prerequisite examinations but had been marked “Not Qualified” for the reasons above stated. At the first hearing on May 7, 1962, held in connection with the character and background of the petitioner, testimony covering less than three typewritten pages was taken with respect to an arrest of .the petitioner in 1958 when he was 17 years of age. Petitioner was then questioned as to six motor vehicle traffic violations. A second hearing was held on July 11, 1962, and of the seven pages of testimony all concerned the arrest in 1958 when petitioner was given youthful offender treatment by the court pursuant to the Youthful Offender Act (Code Crim. Pro., § 913-e et seq.). The investigation was made by the Police Academy Investigations Unit, and is the basis of the information furnished to the Department of Personnel, city’s Civil Service Commission. This report under the heading “ Criminal Record,” states that petitioner was arrested on June 15,1958, and that he was granted youthful offender treatment, and recites the facts in connection with the charges. An information as to one charge against petitioner as a youthful offender was dismissed and on a related charge arising out of the same incident, he was discharged on his own recognizance. This record also gave the information as to two associates who were arrested with petitioner on June 15, 1958. The report also states that the mother of the candidate was a member of an organization helping the blind, the head of which is the wife of an individual who has a criminal record.
The six summonses for driving violations consisted of (1) signal light failure, (2) failure to signal, (3) defective lights, (4) speed, (5) disobeying sign, and (6) double parking. The petitioner paid all the fines for these violations, but made the payments late. However, no warrants were ever issued because of failure to appear and petitioner’s appearance with respect to each violation was voluntary.
At the trial, Commissioner Anthony M. Mauriello testified on behalf of the respondents and he honestly stated that notwithstanding the fact that the notice of disqualification gave the reason “ for driving record and failure to pay on time,” he and the other members of the Civil Service Commission took into consideration all matters included in the report of the Police Academy Investigations Unit, more particularly that portion of *347 the record which gave the ‘‘ Criminal Record ’ ’ against the petitioner as a youthful offender. Not only did this witness testify that the Commissioners took that record into consideration before coming to a conclusion as to the character of the petitioner but that they also considered the fact that the mother of the petitioner was a member of a charitable group aiding the blind of which the head is the wife of a person well known to the Police Department. The information in connection with this phase of the investigation shows that the mother of the petitioner has known the woman since childhood and sees her three or four times a year at meetings held by the foundation. Other information furnished to the commission was that the father of this candidate had been arrested on one occasion for assault which was dismissed and on another occasion for dice playing which resulted in a fine of $2 both of which arrests occurred prior to the birth of this petitioner.
Commissioner Mauriello testified that all these matters referred to in the information furnished by the Police Academy Investigations Unit were considered together with the fact that the petitioner had received summonses on five different occasions arising out of the traffic offenses hereinabove mentioned. As a result, the commission came to the conclusion that the petitioner should be marked, “ Not Qualified.”
It is significant to note that none of the reasons assigned by the witness for the respondents other than “ driving record and failure to pay on time,” were stated in the official notice of disqualification. It is quite evident that the youthful offender record of petitioner was obtained by the investigatory unit which in turn delivered the same to the Personnel Director of the Civil Service Commission. That this record was used and considered by the respondents in arriving at its determination is unquestioned.
This court has on many occasions informed defendants who appeared before him in the youthful offender part of the court that they should not hesitate to take advantage of the so-called Youthful Offender Act as said act gave them full protection even after a determination against them. Section 913-n of the Code of Criminal Procedure reads as follows: “No determination made under the provisions of this title shall operate as a disqualification of any youth subsequently to hold public office, public employment, or as a forfeiture of any right or privilege or to receive any license granted by public authority; and no youth shall be denominated a criminal by reason of such determination, nor shall such determination be deemed a conviction.”
*348 Significant also is that the information furnished to the Civil Service Commission is headed “Criminal Record”. In the instant case it appears that neither of the charges made against the petitioner as a youthful offender resulted in a conviction inasmuch as one charge was dismissed and the other charge, for all practical purposes, also resulted in a dismissal. In the face of the specific language of the statute it must be said that the effect of the submission of the youthful offender record of the petitioner to the Civil Service Commission defeats the very purpose of the act and is in direct violence to the spirit and letter of the act.
While there can be no dispute with the regulation of the Civil Service Commission which reads: ‘ ‘ Satisfactory character and reputation shall be deemed a part of the established minimum requirements and qualifications for admission to an examination or for appointment to a position,” nevertheless the taking into consideration, as the respondents did in the instant proceeding, the fact that the father was arrested before the birth of the petitioner and that his mother was associated with a group of people in a charitable organization of which the head is the wife of a person of questionable character would be classifying the petitioner as guilty by association. Certainly, such association should not in and of itself be said to affect the reputation or character of the petitioner.
Inasmuch as the grounds for disqualification as stated in the notice did not mention any of the facts heretofore referred to in this decision other than the violations of the vehicular and traffic laws, the finding of the respondents is hereby annulled and the matter is remitted to the said respondents for further proceedings in accordance with this decision.